IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | | |
|---|---|---|
| ROBERT JAMES SMITH, #153 533 | * | |
| Plaintiff, | * | |
| v. | * | 2:05-CV-975-WKW |
| | | (WO) |
| DONAL CAMPBELL, *et al.*, | * | |
| Defendants. | * | |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

Plaintiff Robert Smith ["Smith"], an inmate proceeding *pro se,* filed this 42 U.S.C. § 1983 action on October 12, 2005. Smith alleges that due to a lack of security and overcrowding at the Easterling Correctional Facility ["Easterling"], Defendants failed to protect him from an inmate assault in violation of his Eighth and Fourteenth Amendment rights.[1] Smith further alleges that Defendants subjected him to false disciplinary action in order to cover up the basis for the inmate attack, *i.e.*, a lack of security and overcrowding. Finally, Smith alleges that restrictions imposed on the number of inmates allowed in Easterling's law library violated his right of access to the courts. Smith requests a trial by

---

[1] The Eighth Amendment, as applied to the states through the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishment. *Hamm v. DeKalb Cty.,* 774 F.2d 1567, 1571 (11th Cir. 1985). While Smith's complaint alleges that Defendants failed to protect him from harm in violation of both the Eighth and Fourteenth Amendments, the law is settled that the Due Process Clause affords a convicted prisoner no greater protection than the Cruel and Unusual Punishments Clause. *Whitley v. Albers,* 475 U.S. 312, 327 (1986).

jury.

Named as defendants are Warden Gwendolyn Mosley, former Commissioner Donal Campbell, Governor Bob Riley, and Correctional Officers Alvin Jernigan, D.C. Wilson, Bryan Gavins, and Willie Bryant.[2] Smith requests injunctive relief in the form of expungement from his parole and prison records of the disciplinary he received as a result of the inmate assault, the installation of computers in the law library, and the removal of restrictions on law library usage. Smith also requests $5 million in damages.

In accordance with the orders of the court, Defendants filed a special report and supporting evidentiary material in response to the allegations contained in the complaint. (*Doc. No. 25*.) The court then informed Smith that Defendants' special report may, at any time, be treated as a motion for summary judgment, and the court explained to Smith the proper manner in which to respond to a motion for summary judgment. Smith filed a response to the special report filed by Defendants. (*Doc. No. 29*.) This case is now pending on Defendants' motion for summary judgment. Upon consideration of the motion, the evidentiary materials filed in support thereof, and Smith's opposition to this motion, the court concludes that Defendants' motion for summary judgment is due to be granted.

## II. STANDARD OF REVIEW

To survive the properly supported motion for summary judgment filed by Defendants,

---

[2]Smith also named Sgt. Brown as a defendant. This individual's copy of the complaint and order or procedure was returned to the court marked as undeliverable. Sgt. Brown, therefore, was never properly served with the complaint and is, thus, not considered a party to this action. *See* Rule 4(m), *Federal Rules of Civil Procedure*. *See also Doc. No. 22*.

Smith is required to produce some evidence which would be admissible at trial supporting his constitutional claims. Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing adequate to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).

Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d

1573, 1584-1585 (11th Cir. 1996). Summary judgment is, therefore, appropriate when the pleadings, admissible evidentiary materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) *Federal Rules of Civil Procedure*; *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Smith has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.

### III. DISCUSSION

*A. The Request for Injunctive and Declaratory Relief*

Smith is no longer incarcerated at Easterling. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). Because the records before the court clearly reflect that Smith is no longer incarcerated at Easterling, his requests for declaratory and injunctive relief have been rendered moot.

*B. The Failure to Protect Claim*

On August 6, 2005 Smith refereed a basketball game in which inmate Anthony Pless was a participant. During the game Smith called a foul on inmate Pless. After the game was over, inmate Pless, still angry about the call, ran up to Smith "talking trash" whereupon Smith walked away from him to retrieve his shirt. Inmate Pless than coldcocked Smith knocking him momentarily unconscious. Preliminary reports of the incident indicated that both Smith and inmate Pless engaged in a physical altercation. As a result, both Smith and inmate Pless received disciplinary notices for fighting without a weapon. Smith was placed in the restricted dorm and inmate Pless was placed in the segregation unit. At the disciplinary hearing held on August 17, 2005, Smith, the arresting officer (Officer Alvin Jernigan), and inmate Reginald Toles testified. Following the hearing, the disciplinary hearing officer recommended that Smith be found not guilty of the rule infraction inasmuch as the evidence presented at the hearing indicated that he never had a chance to strike back at inmate Pless who had knocked him unconscious with a blow to his jaw. The warden's designee approved the hearing officer's recommendation on August 23, 2005. Smith received a copy of the completed disciplinary report on August 24, 2005. (*Doc. No. 25, Exh. 4.*)

Smith alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to ensure his physical safety in an environment of overcrowding and understaffing which provided opportunity for fellow inmate Pless to attack him. Defendants maintain, however, that Smith was not viciously attacked and that the

incident was not caused by understaffing but, rather, was an isolated event caused by an apparent inability of inmate Pless to accept a decision made by Smith while he was officiating a basketball game.

Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, . . . and [that] the official does not respond[] reasonably to the risk'. . . " *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (*en banc*), *quoting Farmer*, 511 U.S. at 844. "The known risk of injury must be a 'strong likelihood, rather than a mere possibility' before a guard's failure to act constitutes deliberate indifference." *Brown*, 894 F.2d at 1537 (citations omitted); *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997) (unless a prison official actually makes the inference that a substantial risk of serious harm exists, he does not act with deliberate indifference even where his actions violate prison regulations or can be described as stupid or lazy). An inmate "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *McGill v. Duckworth,* 944 F.2d 344, 349 (7th Cir. 1991); *overruled in part on other grounds by*

*Farmer*, 511 U.S. 825. An "official's failure to alleviate a significant risk that he should have perceived but did not," does not constitute deliberate indifference. *Farmer,* 511 U.S. at 838.

Based on the foregoing, to survive summary judgment on his failure to protect claim, Smith must present "sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a ' "sufficiently culpable state of mind." ' " *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists-and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

With respect to the objective element of Smith's Eighth Amendment claim, he must show that the conditions under which he was incarcerated presented "a substantial risk of serious harm" to him. *Farmer,* 511 U.S. at 834. Defendants assert that security was present in the gym at the time Smith was attacked as Defendant Jernigan was the gym officer. While Defendants neither affirm nor deny that Easterling was overcrowded at the time of incident in question, assuming, *arguendo*, that it was, Smith has failed to present any evidence that such condition actually posed "a substantial risk of serious harm" to him. While "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm," *see Hale,* 50 F.3d at 1583, "occasional, isolated attacks by one prisoner on another

7

may not constitute cruel and unusual punishment." *Purcell ex rel. Estate of Morgan v. Toombs County,* Ga., 400 F.3d 1313, 1320-23 (11th Cir. 2005) (granting summary judgment for sheriff and jail administrator where Plaintiff failed to present evidence that conditions at the jail rose to the level of a constitutional violation, despite the fact that inmates were allowed to keep money in their cells; inmates were allowed to play cards and gamble; the physical layout of the jail hindered guards from seeing into certain cells at night from the control tower; and there was a history of isolated, inmate-on-inmate fights). Here, Smith has presented no evidence of other acts of inmate-on-inmate violence, whether from overcrowding, understaffing, or otherwise, nor has he produced evidence of any other conditions at the prison that exposed him to "the constant threat of violence." *Id.* Therefore, the court finds Smith's evidence insufficient for a jury to reasonably find that the conditions under which he was incarcerated presented "a substantial risk of serious harm." *Farmer,* 511 U.S. at 834. Accordingly, Smith has failed to satisfy the objective element of his Eighth Amendment claim.

Smith likewise fails to come forth with sufficient proof that Defendants were subjectively, deliberately indifferent to the risk of serious harm to him. Smith has not shown that Defendants actually knew that a substantial risk of serious harm existed, and that they "knowingly or recklessly" declined to take action to prevent that harm. *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993). As discussed above, Smith has failed to present sufficient evidence that the conditions at Easterling actually posed "a substantial risk of serious harm" to him. Moreover, even if Defendant Jernigan was not in the area where the

incident occurred or even if he had been absent from his assigned post at the time, such allegations, standing alone, do not indicate that Defendant Jernigan was deliberately indifferent to a risk of harm. Deliberate indifference is not established merely by alleging that a prison guard was not at his post. *See Hale,* 50 F.3d at 1582 (guard's failure to check "bullpen" for two-and-a-half hours during which time plaintiff was beaten by other inmates did not "support the level of deliberate indifference and causal connection necessary to hold [the jailer] personally responsible."); *Daniels v. Williams,* 474 U.S. 327, 328-31 (1986) (liability cannot be imposed in a § 1983 action for negligent acts).

Here, the record is devoid of evidence that Defendant Jernigan, or any of the Defendants, were aware of a specific or general risk of an inmate attack on October 6, 2005. There is no evidence before the court that Defendants had any knowledge or reason to believe that inmate Pless would assault Smith, nor is there any evidence "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Farmer,* 511 U.S. at 842 (internal quotation marks omitted). Even if Easterling was experiencing conditions of overcrowding and/or understaffing at the time of the incident, without more, such allegations are insufficient for a jury to reasonably find that these Defendants knew that a substantial risk of serious harm existed, and that they "knowingly or recklessly" declined to take action to prevent that harm. *LaMarca,* 995 F.2d at 1535. Smith has, therefore, failed to establish the requisite element of subjective awareness on the part of Defendants. *Carter*, 352 F.3d at 1350.

Finally, Smith fails to show that Defendants' actions, orders, customs, policies, or

breaches of statutory duty proximately caused the deprivation of his constitutional rights. The evidence in this case indicates that inmate Pless' attack on Smith was isolated and spontaneous and apparently unanticipated by Smith as well as Defendants. Smith has presented no evidence that the attack was the proximate result of any lack of security or overcrowded conditions. Accordingly, the court finds Smith's evidence insufficient to satisfy the causation element of his Eighth Amendment claim.

Because Smith has failed to produce sufficient evidence that Defendants knew of a substantial risk of harm to him, that Defendants were deliberately indifferent to that risk, and that Defendants' conduct caused the deprivation of his constitutional rights, summary judgment is due to be granted to Defendants on Smith's Eighth Amendment claim. *See Celotex Corp.* 477 U.S. at 322.

C. The Disciplinary Claim

As a result of the incident between Smith and inmate Pless on October 6, 2005, Smith received a disciplinary for fighting without a weapon and was assigned to the restricted privileges dorm ("hot dorm"). Smith was ultimately found not guilty of the charge following a disciplinary hearing. (*Doc. No. 25, Exh. 4.*)

To the extent Smith alleges that Defendants violated his Fourteenth Amendment right to due process by filing a false charge of institutional misconduct against him, he does not state a violation of his constitutional rights. The filing of a false or unfounded misconduct charge against an inmate does not constitute a deprivation of a constitutional right. *See Freeman v. Rideout,* 808 F.2d 949 (2nd Cir. 1986); *Flanagan v. Shively,* 783 F. Supp. 922,

10

931-32 (M.D.Pa.), *aff'd,* 980 F.2d 722 (3rd Cir. 1992).

Likewise, Smith's claim that he was denied due process in regard to the disciplinary charge in question does not state a violation of his constitutional rights. The Supreme Court has held that prison regulations on confinement of inmates do not create a liberty interest enforceable in a § 1983 action. *Sandin v. Conner,* 515 U.S. 472 (1995). In *Sandin,* the Court determined that the added restraint of prison discipline "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486. Thus, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes,* 427 U.S. 236, 242 (1976), *quoted in Sandin,* 515 U.S. at 480.

Here, Smith's temporary assignment to the restricted dorm, even if due to an alleged false disciplinary report, did not trigger the protections of the Due Process Clause. *Sandin*, 515 U.S. at 480. Because Smith fails to submit evidence that the discipline he received as a result of the alleged false disciplinary report amounted to a significant and atypical deprivation in relation to the ordinary incidents of prison life, he does not create a genuine issue that he had a liberty interest in avoiding the discipline imposed. *Id*. at 483-84. As this claim fails to state a violation of Smith's constitutional rights, summary judgment is due to granted in favor of Defendants.

*D. The Access to Courts Claim*

Smith alleges that on October 6, 2005 Defendants Bryant, Wilson, and Gavins issued a memo which placed restrictions on the number of inmates allowed in Easterling's law library. According to Smith, the memo indicates that access to the law library is limited to only ten inmates at one time. Smith maintains that, with over one thousand inmates at Easterling and the threat of disciplinary action if an inmate is found in the law library without proper authorization, the library access policy unconstitutionally denied him access to the courts.

Defendants maintain that the "memo" Smith attached to his complaint in support of his access to courts claim (*see Doc. No. 1 at B*) is a document utilized to approve inmates via an appointment process in order to request access to the law library between the hours of 6:00 p.m. and 7:30 p.m., Tuesday through Friday. Otherwise, inmates may use the law library during regular operational hours (12:00 p.m. to 5:00 p.m., Tuesday through Friday and 8:00 a.m. to 4:00 p.m. on Saturdays) when their dormitory is called for yard/gym time. Also, if additional slots remain on the scheduled appointment list such as the one submitted by Smith in support of his complaint, an inmate may request to be added to the list.[3]

Defendants' undisputed evidence reflects that on October 6, 2005 Smith chose to go to the gym rather than the library during his dormitory's scheduled gym/yard time. Further, there remained four open slots on October 6, 2005 for use of the law library during the

---

[3]Easterling's law library may accommodate fourteen inmates not including the library clerks and the law library supervisor. (*Doc. No. 25, Exh. 5.*)

12

appointment only evening hours, and thus, had Smith asked to be placed on the appointment list, approval would have been granted. (*Doc. No. 25*, *Exhs. 2, 3, 5*.)

     *i. Access to Courts in General*

The law is well settled that prison inmates are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance created in *Bounds*. Specifically, the Court mandated that "an inmate alleging a violation of *Bounds* must show actual injury" arising directly from the alleged inadequacies in the law library, legal assistance program or correctional policy. *Lewis*, 518 U.S. at 349. In identifying the specific right protected by *Bounds*, the Court explained that "*Bounds* established no ... right [to a law library or to legal assistance]. The right that *Bounds* acknowledged was the (already well-established) right of **access to the courts** . . . [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.' " *Id*. at 350-351 (emphasis in original) (citations omitted). The Court further determined *Bounds* did not require "that the State . . . enable the prisoner to ***discover grievances***, and to ***litigate effectively*** once in court . . . To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] . . . the Constitution requires." *Id*. at 354 (emphasis in original).

The Court likewise rejected the argument that the mere claim of a systemic defect,

without a showing of actual injury, presented a claim sufficient to confer standing. *Id.* at 349. Moreover, *Lewis* emphasizes that a *Bounds* violation is related to the lack of an inmate's capability to present claims. 518 U.S. at 356. "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When any inmate . . . shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury. *Lewis*, 518 U.S. at 356. Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement . . . [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Id.* at 356-357. "[T]he Constitution does not require that prisoners . . . be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance." *Id.* at 360. The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. *Id.* at 356. A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not . . . thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion

14

within the bounds of constitutional requirements.'  [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500." *Id*. at 363.

  *ii.  Access to the Law Library*

With respect to access to law libraries, "the Constitution does not guarantee a prisoner unlimited access to a law library. Prison officials of necessity must regulate the time, manner, and place in which library facilities are used." *Lindquist v. Idaho State Bd. of Corrections,* 776 F.2d 851, 858 (9th Cir. 1985); *see also Hoover v. Watson,* 886 F. Supp. 410, 419-20 (D.Del.1995). An inmate is not denied meaningful access to the library merely because he must wait his turn to use the library. *Lindquist,* 776 F.2d at 858.  Delaying or restricting inmates' access to a library is permissible because of security or other penological concerns. *Lewis,* 518 U.S. at 362.

In this case, Smith's library access was limited to those times when his dormitory had gym/yard call or when he was approved for use of the law library via the scheduled appointments list. The Court concludes that such  limitations, without more, did not violate Smith's constitutional right to access the courts. *See Hoover*, 886 F. Supp. at 420 (plaintiffs' failed to demonstrate that two to three hours of library time a week constituted access that could be called "meaningless.");  *Cookish v. Rouleau,* 2004 WL 443208, at *9 (D.N.H. Mar.11, 2004) (limiting inmate access to prison law library to four hours per week "clearly permissible").  Moreover, Smith has failed to demonstrate that he suffered the requisite "actual injury" to establish a constitutional violation as a result of the restrictions on law library access.  Smith had utterly and completely failed to come forward with any probative

15

evidence that the limitations imposed on his ability to access the law library deprived him of the *capability* of pursing non-frivolous legal claims before federal or state courts. Smith, therefore, has failed to establish the requisite injury. *Lewis*, 518 U.S. at 356. Summary judgment is, therefore, due to be granted in favor of Defendants on Smith's access to courts claim. *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

*E. Defendants Campbell and Riley*

Smith names former Commissioner Donal Campbell and Governor Bob Riley as defendants. The court understands Smith to name these individuals as defendants based on their supervisory positions. Supervisory personnel, however, cannot be held liable under § 1983 for the actions of their subordinates under a theory of *respondeat superior*. *Monell v. Department of Social Services,* 436 U.S. 658, 691 (1978); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005); *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *LaMarca v. Turner,* 995 F.2d 1526, 1538 (11th Cir.1993). Liability, however, may be imposed if a plaintiff shows a defendant either personally participated in the alleged constitutional violation or instigated or adopted a policy that violated the plaintiff's constitutional rights. *Dolihite v. Maughon,* 74 F.3d 1027, 1052 (11th Cir. 1996). The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by a defendant and the alleged constitutional deprivation. *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 999 (11th Cir. 1995); *Jones v. Preuit & Mauldin*, 851 F.2d 1321 (11th Cir. 1988). The law of this Circuit directs "'that the inquiry into causation must be a

directed one, focusing on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have resulted in a constitutional deprivation.' *Williams v. Bennett*, 689 F.2d 1370, 1381 (11th Cir. 1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983)." *Swint*, 51 F.3d at 999.

Here, the court finds that Smith offers no evidence that Defendants Campbell or Riley had any personal involvement in the incidents about which he complains. Thus, the court finds nothing in the record to establish the requisite causal connection between these defendants and the alleged constitutional deprivations. Accordingly, the court finds that summary judgment is due to be granted in Defendants Campbell and Riley's favor. *See Dolohite*, 74 F.3d at 1052. *See Ross v. Communications Satellite Corp.,* 759 F.2d 355, at 365 (4th Cir.1985) (holding that unsupported allegations "do not confer talismanic immunity from Rule 56.").

*F. The Conspiracy Claim*

To the extent Smith alleges that Defendants conspired to violate his constitutional rights with regard to the allegations presented in the instant complaint, such claim is subject to dismissal. In order to prove a § 1983 conspiracy, Smith "must show that the parties 'reached an understanding' to deny [him] his . . . rights [and] prove an actionable wrong to support the conspiracy." *Bailey v. Board of County Comm'rs of Alachua County,* 956 F.2d 1112, 1122 (11th Cir. 1992). Smith has not shown that Defendants reached an "understanding" to violate his constitutional rights in order to support his conspiracy allegation. *Id.* at 1122. Accordingly, Defendants are entitled to summary judgment on this

17

claim.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (*Doc. No. 25*) be GRANTED;

2. Judgment be ENTERED in favor of Defendants and against Plaintiff;

3. This case be DISMISSED with prejudice; and

4. The costs of this proceeding be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **November 20, 2007**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of*

*Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

    Done, this 8th day of November 2007.


                        /s/Terry F. Moorer
                        TERRY F. MOORER
                        UNITED STATES MAGISTRATE JUDGE